1  JOSHUA P. GILMORE
   Nevada Bar No. 11576
2  STEPHANIE J. GLANTZ
   Nevada Bar No. 14878
3  **BAILEY❖KENNEDY**
   8984 Spanish Ridge Avenue
4  Las Vegas, Nevada 89148-1302
   Telephone:  702.562.8820
5  Facsimile:  702.562.8821
   JGilmore@BaileyKennedy.com
6  SGlantz@BaileyKennedy.com

7  DAVID J. SHAFFER
   *Will comply with LR IA 11-2 within 45 days*
8  KELLEY BROOKS SIMONEAUX
   *Will comply with LR IA 11-2 within 45 days*
9  **DAVID SHAFFER LAW, PLLC**
   1629 K Street NW, Suite #300
10 Washington, DC 20006
   Telephone: 202.508.1490
11 David.Shaffer@davidshafferlaw.com
   Kelley.Simoneaux@davidshafferlaw.com
12
   *Attorneys for Plaintiff*
13 KAREN VELTRI

14              UNITED STATES DISTRICT COURT
                   DISTRICT OF NEVADA
15

16 KAREN VELTRI,

17              Plaintiff,              Case No.  [Case No.]

18       vs.

19 MERRICK GARLAND, in his official capacity
   as U.S. Attorney General Head of the Federal
20 Bureau of Investigation,

21              Defendant.

22

23 **COMPLAINT FOR SEXUAL HARASSMENT, GENDER DISCRIMINATION, HOSTILE**
   **WORK ENVIRONMENT, AND RETALIATION**
24

25                    **JURY DEMAND**

26       COMES NOW, Plaintiff Karen Veltri, by and through counsel, and brings the following

27 Complaint for sexual harassment, gender discrimination, disparate impact on the basis of sex,

28 disparate treatment on the basis of sex, hostile work environment ("HWE"), and retaliation against

1   Defendant Merrick Garland, in his official capacity as U.S. Attorney General, and as head of the

2   Federal Bureau of Investigation ("FBI"), and states as follows.

3                              **NATURE OF ACTION**

4        1.      The predicate for this case is the multiple failures by various divisions in the

5   Department of Justice ("DOJ") and FBI meant to support female employees of the FBI who have

6   faced sexual harassment, gender discrimination, hostile work environment ("HWE"), and retaliation.

7        2.      Plaintiff, Karen Veltri (hereinafter referred to as "Plaintiff"), is a female FBI

8   Supervisory Special Agent ("SSA") who was sexually harassed by two supervisors in the FBI's Las

9   Vegas Division's ("LVD") management team. The first was an executive level management, an

10  Assistant Special Agent in Charge ("ASAC") and the second was an SSA and Employee Assistance

11  Program ("EAP") Counselor to whom Plaintiff reported the sexual harassment by the ASAC. Both

12  received large monetary incentive awards prior to their departure from their supervisory roles and

13  have yet to be held accountable. The ASAC was transferred to his office of preference and will be

14  allowed to retire with full benefits. Plaintiff has suffered continual discrimination, based on her

15  gender, from the SAC, ASAC, and replacement ASAC. As a result, Plaintiff has endured a severe

16  HWE for over a year and a half and was continuously and viciously retaliated against for reporting

17  the illegal acts. Plaintiff was retaliated against for filing official complaints with the FBI's Equal

18  Employment Opportunity ("EEO") office, Inspection Division ("INSD"), FBI's Office of

19  Professional Responsibility ("OPR"). While Plaintiff took every possible step she could to report the

20  misconduct and mitigate future incidents, she was consistently and repeatedly failed by her

21  employer, the FBI.

22       3.      The pattern and practice engaged by the FBI Executive Management ("EM") with the

23  knowing cooperation of the various divisions within the FBI, as well as DOJ, who fail to investigate

24  sexual harassment against female FBI employees and repeatedly allow male agents to receive all

25  benefits in light of such charges, perpetuates a systemic problem. The FBI EM turn their heads to

26  sexual harassment against female FBI employees. These failures are exacerbated by the FBI's EEO

27  Office's failure to investigate these cases impartially and their participation in the cover ups of

28

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

sexual harassment and abuse in the FBI.[1] This case is not unique, but part of the FBI's practices to protect senior management so they can retire before being held accountable for their actions. This practice has also come up in Congressional hearings recently.[2]

4.      This is an action under Title VII of the Civil Rights Act of 1964 for sexual harassment, gender discrimination, HWE, and retaliation for engaging in protected activity when Plaintiff Karen Veltri was sexually harassed by former ASAC Francis S. Cucinotta (hereinafter referred to as "Cucinotta") and former SSA and EAP Counselor Robert A. Bennett (hereinafter referred to as "Bennett"), while creating an HWE. Plaintiff asserts she was continuously harassed and discriminated against based upon her gender by Special Agent in Charge ("SAC") of the Las Vegas Division Aaron C. Rouse (hereinafter referred to as "Rouse"), Cucinotta, and replacement ASAC A. Cynthia Santana (hereinafter referred to as "Santana"). Subsequently, Plaintiff experienced further harassment and discrimination by the FBI, including the FBI's failure to investigate and take measures to ensure Plaintiff was protected from the impact of the sexual harassment.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper in this court in that the district courts have original jurisdiction over Title VII under 28 U.S.C. § § 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3), because they arise under the laws of the United States and are brought to recover damages for deprivation of civil rights.

6.      Venue is proper in this judicial district under 42 U.S.C. § 2000e5(f)(3), because the challenged personnel practices occurred in Nevada.

## ADMINISTRATIVE PROCEDURE

7.      Plaintiff has exhausted her administrative remedies prior to bringing this suit because she filed timely charges of discrimination with the FBI, and 360 days have passed since the filing of

---

[1] *See 'Under the rug:' Sexual misconduct shakes FBI's senior rank* by Jim Mustian: https://apnews.com/article/us-news-sexual-misconduct-christopher-wray-cf95133a3863b287b401c23d3b54b9c3 and *FBI won't 'sidestep' sexual misconduct claims, director say* by Jim Mustian: https://apnews.com/article/fbi-sexual-misconduct-investigation-a0d33e4770acef8ff5f4a48f0267202c

[2] *House Select Intelligence Committee Hearing on Global Threats*, April 15, 2021: https://www.c-span.org/video/?510634-1/house-select-intelligence-committee-hearing-global-threats at 1:07:00 - 1:13:00

BAILEY✶KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

her original complaint, and the FBI has not made a final decision.

8.    On December 28, 2020, Plaintiff filed a second EEO Complaint with FBI's EEO regarding ongoing gender discrimination, HWE, and retaliation. 180 days have passed since that filing and a final decision has not been made.

9.    On February 12, 2021, Plaintiff filed a third EEO Complaint with the FBI's EEO regarding ongoing gender discrimination, HWE, and retaliation. 180 days have passed since that filing and a final decision has not been made.

## PARTIES

10.    Plaintiff is a female and a resident of the State of Nevada. At all times relevant, hereto, Plaintiff was and is an employee of the FBI.

11.    Defendant Merrick Garland (hereinafter referred to as "Defendant") in his official capacity as the Attorney General of the United States of America, and as such is head of the FBI.

12.    Defendant may be served with process at 950 Pennsylvania Avenue NW Washington, DC 20530.

## FACTUAL BACKGROUND

## PLAINTIFF KAREN VELTRI'S BACKGROUND

13.    Plaintiff worked in the private sector for over ten years and in state government before starting her career with the FBI. Plaintiff has a Master's degree in Business Administration and is an FBI Physical Fitness Advisor, Defensive Tactics Instructor, and Phase II Assessor.

14.    Plaintiff has been a Special Agent ("SA") with the FBI since May 23, 2010. From May 2010 through December 2017, Plaintiff successfully investigated federal violations of civil rights, public corruption, human trafficking, financial fraud, violent crime, narcotics, gangs, and bank robberies in the Newark Division. Plaintiff received successful and excellent performance reviews throughout her time there. Plaintiff successfully prosecuted investigations, received multiple awards, and was proven to be a well-established and accomplished FBI Agent.

15.    In December 2017, Plaintiff was awarded an 18-month temporary duty assignment ("TDY") to the FBI's Headquarters' Counterterrorism Division ("CTD") in McLean, Virginia, where she served as an SSA in the International Terrorism Operations Section ("ITOS"). There, she

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

received successful and exemplary performance reviews, passed the Leadership Skills Assessment ("LSA"), and passed the Senior Leadership Interview and Presentation ("SLIP"), all three of which are requirements for a promotion to GS-15.

16.    In November 2019, Plaintiff received a promotion to a permanent SSA position in the Las Vegas Division ("LVD") and was a permanent employee with the LVD, an operating entity under the jurisdiction of the Department of Justice ("DOJ"), in and around the timeframe in which the following incidents occurred.

## SEXUAL HARASSMENT, DISCRIMINATION, HWE, AND
## RETALIATION AGAINST PLAINTIFF

17.    On September 11, 2019, Plaintiff interviewed for the Violent Crimes Against Children and Human Trafficking SSA position ("VCAC") Squad 11, in the LVD, which reported to ASAC Ray E. Johnson. The interview was conducted via videoconference and the chairperson for the local career board ("LCB") was ASAC Francis Cucinotta ("Cucinotta").

18.    On October 29, 2019, Plaintiff subsequently interviewed for the Public Corruption and Civil Rights ("PC/CR") SSA position in the LVD, Squad 13. The chairperson for this LCB was also Cucinotta, and this position reported to Johnson.

19.    In August 2019, Cucinotta called the Acting Assistant Section Chief ("A/ASC") at CTD and asked if Plaintiff was interested in Squad 9, the Joint Terrorism Task Force ("JTTF") and International Terrorism and Domestic Terrorism ("IT/DT") SSA position which was in Cucinotta's direct chain of command. Plaintiff respectfully declined.

20.    Plaintiff was also interviewed for an SSA position in the Salt Lake City Division. Plaintiff was ranked #1 by the Salt Lake City Division for the position, however, Plaintiff ranked the Squad 11 position in the LVD as her #1 preference, due to the nature of the work.

21.    On November 6, 2019, Plaintiff was selected for the Squad 11 position in the LVD, in Johnson's direct chain of command.

22.    On November 7, 2019, Cucinotta called Plaintiff and told her he transferred her to the Squad 9 position, in his direct chain of command. Cucinotta told Plaintiff he and Rouse (who as the SAC is the highest-ranking agent in the LVD) required Plaintiff to report to the LVD before New

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1  Year's Eve 2019, as she was required to work on New Year's Eve. This only allowed Plaintiff

2  approximately 45 days to transfer across the country and was half the allotted time given to FBI

3  employees to transfer to another division.

4       23.    The SSA position for Squad 9, also the Program Coordinator ("PCOR") for the

5  LVD's Counterterrorism Program ("CT"), consisted of handling issues of both International

6  Terrorism and Domestic Terrorism. While typically a job must be posted for a position to be filled,

7  this position was given to Plaintiff without it being officially posted for possible candidates to ensure

8  Plaintiff was in Cucinotta's direct chain of command.

9       24.    In contrast, a male counterpart, also promoted to an SSA position in the LVD from

10  ITOS in Washington, DC a month prior to Plaintiff, was not required to report to the LVD in less

11  time than the allotted 90 days and was not required to work on New Year's Eve.

12       25.    Plaintiff's male counterpart, also transferring to the LVD, worked only CT violations

13  within the FBI (ten years), whereas Plaintiff had a total of two years of CT experience by the time

14  she arrived in the LVD. Although the LVD CT program suffered significantly under Cucinotta for

15  the prior years and consistently had the worst rating possible, Cucinotta chose Plaintiff for his own

16  personal reasons over her male counterpart.

17       26.    According to ASAC Ray Johnson ("Johnson"), Cucinotta "fought" to have Plaintiff

18  moved from Johnson's direct chain of command to Cucinotta's direct chain of command.

19       27.    Plaintiff received transfer orders shortly after November 6, 2019, moved from her

20  residence, bought a house in Las Vegas, and relocated from the Washington, DC area to Las Vegas,

21  NV all within 45 days, as required by Cucinotta. Plaintiff did not utilize the house hunting trip

22  benefits the FBI provided.

23       28.    Upon Plaintiff's arrival to the LVD, she was informed Rouse commonly refers to the

24  LVD as his "Kingdom".

25       29.    Cucinotta told a member of Squad 11 that Plaintiff chose to be reassigned to Squad 9

26  in an attempt to disguise his intentions of obtaining an inappropriate and sexual relationship with his

27  direct subordinate.

28  / / /

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

30. Beginning on January 10, 2020, and during multiple subsequent conversations in Plaintiff's office, Cucinotta asked, "where are your pictures?" as he looked around her desk for photographs. These inquiries by Plaintiff's first-line supervisor began less than two weeks into Plaintiff's SSA position in the LVD. Plaintiff asserts Cucinotta was seeking to determine her marital status, sexual orientation, and to determine if she had ties to another adult male or female (i.e. her "availability").

31. Cucinotta initiated multiple conversations with Plaintiff to try to obtain information about her personal life. He showed intent interest in determining her sexual orientation, marital status, and her romantic availability. Plaintiff made it clear that these inquiries were unwelcome as she had never disclosed personal information about herself in the work setting and furthermore had no interest in pursuing any type of personal relationship with Cucinotta, let alone a romantic or sexual relationship.

32. During one conversation, Plaintiff asked Cucinotta why he moved her to Squad 9. Cucinotta replied, "It doesn't matter. You're under me now" as Cucinotta made a motion with his hand, dismissing her question, and smiled in an inappropriate and alarming manner.

33. On January 14, 2020, after a supervisors' conference surrounding the upcoming LVD field office inspection ("FOI") in late February 2020, Plaintiff was introduced to ASAC Michael Hickok ("Hickok"). At the conference, Cucinotta swatted Hickok on his arm as he walked by and said, "she's under me now" as Cucinotta smiled in a demeaning manner. This situation was very uncomfortable for Plaintiff because Cucinotta was clearly showing off Plaintiff to Hickok, like a trophy he had won. At the time of the incident, Hickok was well known to have sexually harassed employees in the LVD's Reno Resident Agency ("RA") and is currently under DOJ OIG investigation. Hickok was quietly transferred to his office of preference abruptly after the LVD inspection ended in March 2020, along with Cucinotta.

34. Cucinotta became obsessed with Plaintiff's whereabouts, especially compared to her male counterparts. Cucinotta tried desperately to integrate himself into every aspect of Plaintiff's work life and attempted, on multiple occasions, to integrate himself into her personal life.

/ / /

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

35.    On January 21, 2020, during a conversation in Cucinotta's office, he asked Plaintiff if she had heard of the term "ground balls". Cucinotta continued by saying ground balls were "easy". Cucinotta followed by stating "I'm sure you know all about the bases, but I'm talking about ground balls", as he winked and smiled in a creepy and unprofessional fashion. This dialogue by Cucinotta was sexually suggestive and completely inappropriate.

36.    Plaintiff referred to all of her supervisors as "boss". On multiple occasions and in response to Plaintiff referring to Cucinotta as "boss," Cucinotta responded, "I'll show you boss" and smiled in an inappropriate and creepy manner.

37.    In Cucinotta's SSS to Equal Employment Opportunity investigators on September 3, 2020, he does not deny the sexual harassment comments he made to Plaintiff, he indicates Plaintiff just misunderstood.

38.    Inspection credits are necessary to obtain promotions to the GS-15 level positions in the FBI. More importantly, obtaining field office inspections ("FOI") as well as internal inspections, were a specific objective approved by both Cucinotta and Rouse on January 27, 2020, with a start date of January 27, 2020, and end date of May 4, 2020, in Plaintiff's performance plan.

39.    Less than 10 days after Cucinotta and Rouse approved Plaintiff's performance plan objectives, on February 5, 2020, Cucinotta and Rouse denied Plaintiff's request to take part in an FOI scheduled for May 2020. Plaintiff's male counterparts and predecessors were provided the FOI opportunities by Cucinotta and Rouse within a year of their arrival to the LVD. Rouse and Cucinotta stated that there was an unwritten rule that any employee on their management team who arrived to the LVD, was denied the opportunity to take part in FOI's for their first year. Rouse and Cucinotta did not hold Plaintiff's male counterparts to the same "unwritten" policy. Furthermore, the FBI does not implement "unwritten" policies.

40.    Throughout February 2020, Cucinotta repeatedly asked Plaintiff if she was going to a presentation, not mandated by the FBI and was outside of the workplace. A week prior to the presentation, Cucinotta continuously asked Plaintiff about her attendance status. When at first Plaintiff did not provide an answer, Cucinotta became agitated. Plaintiff then told Cucinotta she would not be attending the presentation and Cucinotta replied in a jealous fashion, "is there someone

1  better you are going to see?"

2        41.    Throughout February 2020, Cucinotta suggested, on multiple occasions that he and

3  Plaintiff spend time together outside of the traditional work environment.

4        42.    During this time, there were discussions about combining the ASAC and PCOR

5  conferences in Washington, DC into one conference due to COVID-19. After the conclusion of a

6  branch meeting, Cucinotta approached Plaintiff and told her he would only attend the conference if

7  the conferences were combined and suggested they could "go together". Cucinotta followed up by

8  explaining to Plaintiff, he would not attend if it was only an ASAC conference because he "didn't get

9  anything out of it last time" as he smiled and winked at Plaintiff.

10       43.    Throughout February 2020, Cucinotta also took it upon himself to tell Plaintiff that

11 his wife and children were no longer in Nevada. Cucinotta was purposely going out of his way to let

12 Plaintiff know.

13       44.    In February 2020, when Cucinotta realized his attempts at a sexual relationship with

14 Plaintiff were continuing to be ignored, Cucinotta took it a step further. Cucinotta told Plaintiff on

15 numerous occasions that he often "stays at work after everyone has left". Cucinotta would hint for

16 Plaintiff to stay late as well. Cucinotta's invitations to stay late were clearly not work-related and

17 Cucinotta was, once again, attempting to have an inappropriate sexual relationship with his

18 subordinate.

19       45.    During the Las Vegas FOI and in an attempt to disclose the sexual harassment and

20 discrimination, Plaintiff asked one of the inspectors if she could be interviewed. The inspector told

21 Plaintiff she was not employed by the LVD during the scope of the investigation; therefore, he was

22 unable to interview her.

23       46.    In late February/early March 2020, Bennett became the acting SSA for Squad 16,

24 Squad 9's sister squad, and the other JTTF squad in the LVD. Bennett was promoted to Squad 16 in

25 April 2020 for a one-year term. Bennett is also an EAP Counselor. During this same time frame,

26 Plaintiff confided in Bennett about the sexual harassment from Cucinotta and discrimination she was

27 incurring from both Cucinotta and Rouse. Bennett acknowledged that Plaintiff's concerns about

28 Cuncinotta were plausible given that his family had left Nevada and he was alone for an extended

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

period of time. However, he took no further action related to her claims of sexual harassment.

47.    The EAP is designed to assist employees in resolving personal problems that may be adversely affecting an employee's performance or health in the workplace. Employees of the FBI who wish to become an EAP Counselor are provided additional training to assist workers with wellness matters such as alcohol or substance abuse, stress management, and traumatic events such as sexual harassment.

48.    Although Plaintiff contacted the EAP related to the sexual harassment she was experiencing by Cucinotta, she was not provided any resources and no actions were taken towards Cucinotta for his behavior.

49.    On March 4, 2020, Cucinotta called Plaintiff at approximately 2:00 pm agitated because he was not aware of her whereabouts. After explaining to Cucinotta she was en route to a fit for duty physician's office, a medical requirement of the FBI, to have her tuberculosis test read, Cucinotta angrily said, "I thought I would see you at the closing!" This was related to the closing meeting for the FOI that had been taking place at LVD. After Plaintiff explained to Cucinotta she had informed his Administrative Assistant ("AA") where she was going and that the email regarding the meeting did not indicate that the meeting was mandatory, Cucinotta replied, "yes it was, but I'll cover for you," as if he was doing Plaintiff a favor. According to the email invitation, the inspection closing was not mandatory. This was an example of an ongoing

obsession of Cucinotta to track Plaintiff's whereabouts.

50.    On March 13, 2020, during a branch meeting, Cucinotta sobbed as he announced he was transferring to the San Antonio Division. After the meeting, Cucinotta went out of his way (instead of exiting the room) and walked directly in the direction where Plaintiff was located. Sensing that Cucinotta was going to place her in an awkward situation and force her into physical contact with him, Plaintiff remained seated and kept her back to him. Cucinotta stood behind Plaintiff for several minutes and she could see by his disapproving look that he was becoming agitated that she was not comforting him and providing him attention. Before walking off, Cucinotta aggressively pushed the rolling chair next to Plaintiff to ensure she knew he was not happy with her decision not to engage him or comfort him. Cucinotta was hostile with Plaintiff because she ignored

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1   his attempts to engage in an inappropriate sexual relationship with her supervisor.

2       51.    On March 16, 2020, Plaintiff received a call from a SA on her squad indicating he

3   likely had COVID-19. It became quickly apparent Cucinotta was not interested in addressing the

4   issue so after Plaintiff called the Administrative Officer and left a message, she called the Operation

5   Center ("OC") to get a better understanding of what she was required to do moving forward. During

6   her second phone call with the OC, Plaintiff was told EM finally decided to close the SCIF (a

7   protected area that Plaintiff and members of her squad worked). That same morning Plaintiff made

8   subsequent telephone calls to Cucinotta and various other personnel. EM also made the decision to

9   have all of the employees who work in the SCIF moved to the emergency operations center

10  ("EOC"). At approximately 8:27am and as Plaintiff walked out to her car, 12 minutes past the

11  required time to call into the OC on her bureau radio, she received a telephone call from Cucinotta's

12  AA who said Cucinotta wanted to see her right away. At approximately 8:50am, the AA called again

13  and asked for Plaintiff's location. When Plaintiff replied she was down the street from the office, the

14  AA explained that upon her arrival, she must go directly to Cucinotta's office. At approximately

15  9:00am, Plaintiff arrived in Cucinotta's office and before she sat down or took off her jacket,

16  Cucinotta began berating her for not being in the office when he called and demanded to know

17  where she had been, despite their emails and multiple telephone conversations earlier that morning.

18  Cucinotta continued to respond to Plaintiff with aggression because Plaintiff is a female and did not

19  entertain any of Cucinotta's offers to have a relationship or sexual encounters with him.

20      52.    On March 17, 2020, prior to a scheduled meeting in Cucinotta's office, he was in the

21  SCIF area of the LVD and conversed with Bennett and Plaintiff. Due to the fact Bennett and Plaintiff

22  spoke to Cucinotta at great length already that morning, neither one believed there would still be an

23  additional meeting with Cucinotta. However, upon their arrival to his office, Cucinotta told Bennett

24  he was excused for being late to the meeting, but Plaintiff should have known better and continued

25  to personally berate Plaintiff and said, "what's your excuse", in an overly aggressive manner.

26  Cucinotta exhibited anger towards Plaintiff on this occasion and many others because she would not

27  entertain Cucinotta's offers to engage in an inappropriate relationship.

28  / / /

53.     As a further example of Cucinotta's inappropriate behavior towards Plaintiff, one day she wore her hair down to work when Cucinotta was still in the LVD. Cucinotta immediately commented to Plaintiff how "nice" her hair looked down and that she should "wear it down more often" as he smiled and winked inappropriately. Cucinotta also allowed Plaintiff's male counterparts to wear jeans on Fridays but specifically told Plaintiff she was not allowed to ever wear jeans. Cucinotta also allowed Plaintiff's male counterparts to engage in ancillary duties such as SWAT and ERT but denied Plaintiff's request to administer the Physical Fitness Test (PFT) or Agent Fitness Test (AFT).

54.     On March 17, 2020, Cucinotta sent an email asking supervisors for their questions/concerns related to COVID-19. Later that day after receiving feedback from both Squads 9 and 16 (JTTF), Plaintiff sent an email to Cucinotta and cc'd Bennett, listing the questions/concerns from both JTTF squads. Later that same day, Cucinotta was visibly furious with Plaintiff for expressing her concerns. In a meeting later that day with Cucinotta, he repeatedly threatened Plaintiff and said they were "going to have a problem" if she didn't stop expressing her concerns. At approximately 5:30 pm, Plaintiff initiated a conversation with Cucinotta where Plaintiff brought forth serious concerns about the negative impact of the COVID-19 national pandemic on SAs in the National Security branch that EM was not taking into consideration. Plaintiff explained to Cucinotta that they would be violating the FBI Domestic Investigations and Operations Guide ("DIOG") and putting an unnecessary health risk on the SAs and Task Force Officers on the JTTF. Cucinotta became visibly and physically angry and he began to shake, and his face turned bright red as he began to sweat profusely. Throughout the conversation, Cucinotta became increasingly verbally combative. Cucinotta screamed at Plaintiff, stating the "decisions have already been made!" and completely dismissed Plaintiff's concerns. Cucinotta continued yelling, "if you're going to be part of the leadership team in Las Vegas, you will adopt these decisions as your own and convey them to your SAs as if they were your own". Cucinotta continued to threaten Plaintiff "if you can't do that, then we are going to have a problem!" Due to her gender, the fact Plaintiff would not engage in an inappropriate and/or sexual relationship with Cucinotta, and that she openly expressed her concerns and those expressed by her SA's co-workers, Cucinotta was absolutely furious. Cucinotta then

BAILEY✤KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

threatened Plaintiff that if she did not follow suit, she would pay a price. As a result of Cucinotta's
disturbing reaction to these reasonable concerns, Plaintiff refrained from any face-to-face contact
with Cucinotta. Bennett expressed the same concerns as Plaintiff but faced no consequence.

55.     Just days after the COVID-19 National Pandemic was declared a state and national
emergency, at 11:59pm on March 19, 2020, Cucinotta sent an email to acting ASAC ("A/ASAC")
Santana. Cucinotta and Santana are classmates from the FBI's training academy in Quantico, VA,
former co-workers, and very close friends. In the email, Cucinotta explains to Santana that he drafted
Plaintiff's check-in in which he rated her an unacceptable and inconsistent performer. Cucinotta goes
on to explain to Santana that the FBI's Performance Appraisal Unit ("PAU") did not support a
performance improvement plan ("PIP") for Plaintiff because she had not been on her 2020
performance plan for 90 days. (As a matter of reference, at the time the email was sent, Plaintiff had
been on her 2020 performance plan for approximately 25 business days.) By way of background, a
PIP is the last step an FBI manager takes before removing an employee from their position or from
the FBI completely. In addition, Cucinotta did not write or draft any other check-in for any of his
male supervisors prior to his abrupt departure from the LVD, despite them all being due on the same
date. Cucinotta doubled Plaintiff's responsibilities while simultaneously seeking to demote Plaintiff.

56.     Cucinotta's last day as ASAC at LVD was March 20, 2020. Instead of being
investigated for the claims of sexual harassment, creating a hostile work environment, and
retaliation, prior to Cucinotta's abrupt departure from the LVD, Rouse awarded Cucinotta with an
exemplary performance award and Medal of Excellence for approximately $10,000.

57.     On April 15, 2020, less than 30 days after Cucinotta and Hickok abruptly left the
LVD, A/ASAC Santana called Plaintiff to her office to tell her that her performance check-in was
going to be posted and that it was completely negative and did not include anything positive. When
Plaintiff asked why the review was negative, A/ASAC Santana said she was unable to comment
because it was written by Cucinotta. When Santana officially published the review the next day, with
the approval of the PAU, the review was the exact same, verbatim, from the email Cucinotta sent to
Santana on March 19, 2020. This performance review was a clear attempt by Cucinotta to ruin
Plaintiff's reputation as well as retaliation for not engaging in a sexual relationship with Cucinotta.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

58.     On April 16, 2020, Plaintiff filed a complaint with the FBI INSD, and DOJ OPR. On December 14, 2020, Plaintiff inquired with FBI INSD as to the status of her complaint. FBI INSD replied on December 28, 2020, that the matter was still pending review with DOJ OIG. As the date of the date this complaint was filed, there have no inquiries into any of Plaintiff's claims. According to the FBI's Harassment Policy Directive 1038D, 5.3.3.1. Report the allegation, in writing, to the INSD, IIS, which then becomes responsible for notifying the employee of the status of the complaint.

59.     Beginning April 15, 2020, Rouse and Santana purposely failed to conduct Plaintiff's follow-up check-in performance review, previously arranged with Plaintiff and PAU, which was to be conducted in 30 days. Rouse and Santana purposely delayed Plaintiff's follow-up check-in. Santana repeatedly told Plaintiff, more specifically on May 5, 2020, May 16, 2020, and July 22, 2020, she would conduct the check-in but failed to do so, until four months later, on September 12, 2020.

60.     During this time, Santana failed to contact the United States Attorney's Office ("USAO") regarding the prosecution of three cases, despite Plaintiff's multiple requests. This was a factor in the USAO's decision to decline prosecution of the cases.

61.     On April 21, 2020, A/ASAC Santana denied Plaintiff's request to take part in the Omaha Division Inspection, the second inspection Plaintiff requested permission to attend in order to complete a clearly defined objective required in her performance plan and approved by Cucinotta and Rouse on January 27, 2020. When A/ASAC Santana denied Plaintiff's participation request, Santana said it was due to Plaintiff's negative check-in review authored by Cucinotta. A/ASAC Santana added Rouse was no longer allowing new SSA's to take part in inspections during their first year.

62.     Beginning on May 5, 2020, Rouse and Santana deliberately interfered with Plaintiff's work performance by purposely delaying the approval of a time-sensitive and crucial investigative technique. Santana told Plaintiff Rouse was demanding Plaintiff to "pump the brakes".

63.     On May 21, 2020, Plaintiff was told "Cucinotta is still trying to influence Santana's decision regarding your performance" by another SSS in the LVD.

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

64.    On May 26, 2020, Plaintiff was called into ASAC Ray Johnson's (Johnson) office. Johnson explained how EEO Complaints were filed against him previously and that the FBI always wins. Johnson further explained to Plaintiff that EEO complaints were always unsubstantiated and asked why she bothered filing with EEO as "no one cares about EEO Complaints, they never go anywhere anyway".

65.    On multiple occasions, Rouse intentionally minimized the success of a nationally recognized case and told an LVD media representative "not to shine a light on the JTTF". The investigation took place during the COVID-19 National Pandemic and civil unrest.

66.    Also, on May 26, 2020, Santana received the permanent ASAC position.

67.    On May 31, 2020, Rouse went out of his way to chastise Plaintiff in front of a group of her peers in order to disparage the success of the nationally recognized case. Santana told Plaintiff she and the case agents were to report to Rouse's office, although they had not slept in over 32 hours, due to the disruption of the subjects and subsequent searches the previous night. When Plaintiff asked Santana the reason for the unscheduled meeting, Santana was unable or unwilling to explain. At the meeting, Rouse chastised Plaintiff for communicating with FBI HQ, something Plaintiff was required to do on a daily basis, but never gave a specific reason as to what was said that he didn't approve.

68.    In late May 2020, despite the tumultuous circumstances of the COVID-19 National Pandemic and the civil unrest in the U.S., Plaintiff's squad received national media attention for their disruption of a terrorism case.

69.    On June 4, 2020, according to the then Attorney General of Nevada, the case on Plaintiff's squad was going to be mentioned in a national press conference, later than morning, with FBI Director Christopher Wray and U.S. Attorney General William P. Barr.

70.    Also, on June 4, 2020, Nevada's United States Attorney's Office ("USAO") published a press release for the case, as the case received a plethora of media coverage across the country.

71.    On September 30, 2020, the LVD's CT program, the program in which Plaintiff is the coordinator or PCOR, received a "gold" rating for fiscal year 2020 in the annual FBI's IPM.

1   Previously, the LVD's CT program had never received a "gold" in IPM.

2       72.   The LVD EM failed to acknowledge Plaintiff's accomplishments verbally, via email,

3   text, or any other form of communication, to include her annual performance review or any interim

4   reviews, up to and to include the date of this Complaint.

5       73.   On September 21, 2020, Bennett and Plaintiff (both JTTF SSAs) were scheduled to

6   attend a JTTF Executive Board Meeting (first meeting for Plaintiff due to COVID). Minutes before

7   the meeting, Bennett told Plaintiff that Santana indicated he was not required to attend. Confused as

8   to whether or not SSAs were required to attend, Plaintiff asked Santana. Santana responded by

9   screaming at Plaintiff over the phone and asked why she would ever think she was not required to

10  attend. Plaintiff explained Bennett told her he was not required to attend. Santana responded by

11  saying Bennett was wearing jeans and that she would have a conversation with Bennett about his

12  attire at a later time. According to Bennett, Santana never counseled Bennett for not being properly

13  dressed and excused Plaintiff's male counterpart from the meeting due to his improper attire.

14      74.   On September 25, 2020, Plaintiff sent Santana an email indicating 14 paragraphs of

15  Plaintiff's accomplishments to date. Santana wrote one short paragraph in Plaintiff's wrap-up and

16  under "How Can I Develop", Santana wrote Plaintiff should "seek out inspection opportunities" and

17  "seek out mentoring opportunities which could include shadowing an HQ UC/SC in a program you

18  have an interest in and filling the role of A/ASAC when the occasion arises". Once again, Santana

19  required Plaintiff to accomplish objectives in which Santana refused to provide the opportunities.

20      75.   On October 5, 2020, once Plaintiff was eligible to submit an application for a position

21  outside of the LVD, she applied to two GS-15 level positions in which she was qualified, according

22  to the FBI's application system. Plaintiff subsequently interviewed for both GS-15 positions. On

23  November 24, 2020, Plaintiff was notified via email she was removed from both of the GS-15

24  positions in which she applied and had incurred a "6-month penalty and will not be eligible to apply

25  for jobs". Plaintiff was told by the Human Resource Division (HRD) she was ineligible and

26  misunderstood the job posting requirements. The FBI's electronic application system is set up so that

27  if an employee is not eligible for a position, they are not given the opportunity to apply or interview

28  for the position.

76.     On October 6, 2020, Santana forced Plaintiff to lower two of her squad members' annual performance ratings from "excellent" to "successful" in order to make her squad appear less successful.

77.     Towards the end of 2020, Santana failed to have Plaintiff act on her behalf as ASAC in her absence, Bennett was asked instead. The LVD EM failed to give Plaintiff A/ASAC opportunities again. These opportunities give SSA's the ability to converse with other GS-15 positions to gain mentoring experience. "Spending time with a GS-15 or above for Plaintiff to further understand program measures and threats" is a developmental objective for Plaintiff in both her 2020 and 2021 annual performance plans. This is another example of Santana impeding in Plaintiff's ability to acquire the required objectives.

78.     During the same period, Rouse refused to acknowledge Plaintiff. Rouse repeatedly ignored Plaintiff in the executive suite, in meetings, and when he saw her in the hallways of the field office.

79.     On November 3, 2020, Plaintiff and her squad were awarded the Las Vegas Metropolitan Police Department's Unit Meritorious Award for the nationally recognized case disruption. A Captain of the LVMPD also told Plaintiff he already informed Santana as well as Rouse. Neither Plaintiff nor her squad were ever recognized for the award by either Rouse or Santana.

80.     On November 16, 2020, the LVD EM failed to mention Plaintiff's nationally recognized case or "gold" IPM accomplishments in her annual performance review or "wrap-up", signed by both Rouse and Santana. In fact, the wrap-up included a very small snippet of Plaintiff's accomplishments in order to downplay Plaintiff's successes.

81.     Throughout 2020, the LVD EM failed to acknowledge Plaintiff's initiatives to include a K-9 for the LVD as well as an online platform. Both requests were repeatedly ignored by EM.

82.     Throughout 2020 and 2021, the LVD EM, Rouse and Santana, failed to recognize Plaintiff's successes with recognition awards to include incentive awards and time off awards, whereas her male counterparts were given those awards.

///

83.     The LVD EM failed to allow Plaintiff the opportunity to participate in local career boards by premeditatedly excluding and ostracizing Plaintiff but allowed her male counterparts, newer to the LVD and with less time as a supervisor, those opportunities.

84.     In the Fall of 2020, Bennett began making derogatory comments to Plaintiff. Bennett used the term "bros before hoes". This slang expression, according to Bennett, is how men should not abandon their male friends in place of their relationships with women. Plaintiff further asserts Bennett was referring to his relationships with bros, or other males, and how they take precedence over hoe's, AKA women.

85.     On November 20, 2020, Bennett sent Plaintiff in a text message on her bureau-issued cell phone, a photograph with a rainbow-colored dildo between his legs. A dildo is a sex toy, phallic in appearance, and is used for sexual penetration or other sexual activity. Plaintiff asserts Bennett was attempting to confirm her sexuality due to the rainbow color of the dildo. Underneath the photograph, Bennett wrote "My Dick pic!!!!!". Bennett, as an EAP that Plaintiff had confided in previously, was aware that Cucinotta got away with his sexual behavior and harassment of Plaintiff and acted in such a manner knowing he could get away with his harassing behavior as well.

86.     On November 24, 2020, Bennett sent Plaintiff a text message on her bureau-issued cell phone, and texted "I was looking for Bieber dick pics". On the same date, Bennett sent a meme of a white unicorn with red heart-shaped eyes, and a rainbow-colored horn, the same color as the dildo sent previously. The message ended with four red hearts. Plaintiff asserts Bennett was again, fishing for a response to confirm her sexuality.

87.     On multiple occasions, Bennett sent Plaintiff excessive photographs of alcohol and guns. Bennett had the reputation in the LVD and with local police departments as being lazy and a drunk and would often go home to sleep or sleep in his bureau vehicle during work hours to rid his hangover.

88.     On December 11, 2020, FBI Director Christopher Wray sent an email regarding sexual harassment where he discussed the FBI's "zero tolerance for any form of sexual harassment". Wray continued "No one deserves unwelcome sexual misconduct or sexual harassment, and no one should suffer in silence or feel like they need to tolerate inappropriate or illegal behavior".

89.     On December 11, 2020, Plaintiff submitted her application for a voluntary rotational transfer (VRT) to the VCAC HQ in Linthicum, MD. She has not been approved for the VRT forcing her to remain in a hostile work environment.

90.     On December 14, 2020, Plaintiff sent the images from Bennett to the FBI's Discovery Processing Unit ("DPU"). Plaintiff was already experiencing substantial retaliation from the LVD EM for reporting the sexual harassment by Cucinotta and was reluctant to report Bennett.

91.     In late January 2021, Bennett began calling into the OC within seconds of Plaintiff, almost daily. Plaintiff then continuously called into the OC via her cell phone in order to avoid Bennett's sexual harassment and embarrassment.

92.     On February 2, 2021, Bennett sent Plaintiff a work-related text message and followed by texting, "I still have almost a full coffee to drink before I put my pants on".

93.     On February 7, 2021, Bennett sent Plaintiff a text message and photographs of himself at a Super Bowl party on Plaintiff's bureau-issued cell phone. The text message read "Hey Cynthia give me until one to report. I'm out hanging with my buddy Chris had a good time at the Super Bowl party but I'm obviously fucking drunk so I won't be in til noon or one and Cynthia gave me a blessing. See you tomorrow". The text messaged that followed read "I just don't wanna bullshit you I'm drunk as fuck and I need til noon or one to sober up to show up so handle shit for me". Cynthia refers to A. Cynthia Santana, the ASAC.

94.     On February 10, 2021, Rouse and Santana allowed Bennett to have a SA present in his place at an FBI's Citizen's Academy but Plaintiff was not permitted. When Plaintiff asked Santana why Bennett was allowed to be relieved of his duties but Plaintiff was not, Santana screamed at Plaintiff on the phone and said Bennett was "like a fish out of water when it came to DT matters". Plaintiff reminded Santana, Bennett received all of the national leads regarding the January 6, 2021, Capitol Riots and had over 20 years of experience in the FBI. Santana hung up the phone on Plaintiff. The same day, Plaintiff sought out another EAP Counselor for support. Plaintiff also called an EEO Counselor to whom she previously communicated, regarding the ongoing situation.

95.     On February 12, 2021, Plaintiff reported Bennett's text messages, comments, and photographs to the FBI's EEO.

96.     On February 13, 2021, Bennett sent Plaintiff a text message asking Plaintiff out to dinner on Valentine's Day. When Plaintiff asked what would cause Bennett to think they were Valentine's, Bennett became angry and defensive.

97.     In a meeting with Santana on February 16, 2021, Bennett was visibly angry with Plaintiff.

98.     On February 16, 2021, Plaintiff sent EEO, who forwarded them to FBI INSD additional photographs of guns and alcohol she received from Bennett and expressed her concerns to EEO regarding a loaded shotgun Bennett kept in a cabinet, next to his desk, in his office. Plaintiff was "highly" concerned due to the protected disclosure and Bennett's alcohol use and increasingly angry demeanor. Plaintiff further explained to EEO Bennett was also an EAP Counselor.

99.     On February 17, 2021, Plaintiff asked to see Santana and told Santana about the sexual harassment she incurred from Bennett over the last few months. Plaintiff showed Santana the text messages and photographs sent to her by Bennett. Plaintiff and Santana conversed for approximately 45 minutes. Plaintiff shared her concerns with Santana regarding Bennett due to his recent anger issues and alcohol use. Approximately an hour after Plaintiff left Santana's office, Santana's AA called Plaintiff and told her to return to Santana's office. When Plaintiff arrived in the executive suite, Santana remained behind closed doors with Rouse. When Santana came out of Rouse's office, she was visibly shaken and frazzled and her face was bright red. Santana and Plaintiff were in Santana's office when Santana told Plaintiff she and Rouse were going to refer Plaintiff to OPR for unprofessionalism if Plaintiff could not be professional with Bennett. Santana further explained she spoke with Bennett and that Bennett would not be moving from his SSA position in the SCIF, in the office next to Plaintiff's desk. Rouse and Santana wanted to ensure Bennett received full benefits for his one-year term as SSA and allowed him to remain as Squad 16 SSA until April 2021.

100.     On February 18, 2021, Plaintiff texted Santana for confirmation regarding their discussion surrounding their threat of retaliation for disclosing sexual harassment to her direct supervisor and to executive level management in the LVD. In a response text message, Santana reiterated Plaintiff would be referred to OPR if Plaintiff could not be professional to Bennett.

101.    On February 19, 2021, Plaintiff received an automated email generated from HR Source that Santana published "Quick Feedback" into Plaintiff's electronic human resource file. Santana wrote in the employee's personnel file "Per our discussion on 02/16/2021, you are requested to limit communication with SSA Bennett to purely work-related matters and conduct yourself in a professional manner at all times". Plaintiff replied to Santana with the automatic email and explained how reporting sexual harassment in the workplace was not easy. Plaintiff further explained she did not feel as though she disclosed the information in an unprofessional manner, and she did not feel as though her responses to Bennett were unprofessional. Santana responded via email that she had no reason to believe Plaintiff's text messages to Bennett were unprofessional however, Santana further explained she wanted to ensure all future communication between Bennett and Plaintiff was professional.

102.    On February 22nd, 24th, and March 8th, Bennett purposely took an aggressive stance in front of the SCIF door to not allow Plaintiff to enter. Bennett is approximately 6'5 tall and 450 pounds. Again, these concerns were shared with Santana on February 17, 2021.

103.    In February and March 2021, Plaintiff applied to multiple 1811 series jobs through USAJOBS, outside of the FBI in an attempt to remove herself from the hostile work environment.

104.    On March 4, 2021, Deputy Director ("DD") Paul Abbate sent an email to all FBI employees. In the email, DD Abbate discussed the FBI's zero tolerance policy for sexual harassment as well as the assistance the FBI would provide if someone experienced sexual harassment as well as a 24-hour assistance line staffed with an EAP on-call licensed clinician.

105.    On March 4, 2021, Plaintiff sent an email to DD Paul Abbate, Assistant Director ("AD") Catherine Bruno (FBI's Office of Integrity & Compliance), AD Douglas Leff (FBI INSD), and AD Lon Platt (FBI Office of Professional Responsibility) regarding the sexual harassment by Cucinotta and Bennett as well as the discrimination, HWE, and retaliation.

106.    On March 18, 2021, and less than 30 days after Plaintiff disclosed the sexual harassment from Bennett to Santana, Santana recommended Bennett for an incentive award for his "steadfast adherence to high professional conduct as SSA". The incentive award was approved by Rouse. In an email dated December 11, 2020, Rouse stated, "Any allegation of misconduct will be

BAILEY✦✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

acted upon by me in accordance with established Bureau policy and disciplinary procedures". In the email, Rouse failed to mention the perpetrator would also receive an incentive award.

107.    On March 31, 2021, Plaintiff sent Bennett an email respectfully requesting Bennet "send any requests for assistance from my squad directly to me in the event there is no one available from Squad 16 and please keep me in the loop". The email was in response to Plaintiff's receiving a complaint from one of her task force officers ("TFO"). Bennett called the TFO the night prior and told him to respond to a potential threat to life. Less than one half hour later, Santana called Plaintiff. Santana told Plaintiff she was in her right to ask Bennett to keep her in the loop and request any assistance from her squad. Santana said she called Plaintiff in order to stop any "pissing contest" between Plaintiff and Bennett.

108.    On April 13, 2021, Rouse presented Bennett with the incentive award at the Monthly All Employee Conference in the LVD.

109.    On April 15, 2021, Director Wray testified in front of Congress to discuss the FBI's zero tolerance policy and the FBI EAP representatives who were available to support victims of sexual harassment.

110.    On April 16, 2021, Plaintiff emailed Director Wray regarding the sexual harassment she incurred from both Cucinotta and Bennett as well as the actions of Rouse and Santana.

111.    Multiple emails from FBI EM HQ have been sent regarding the FBI's attempt at combating sexual harassment in the workplace. This is because the FBI has seen a dramatic increase in the number of sexual harassment incidents, yet they still have failed to address this ongoing and inherent problem.

112.    On May 1, 2021, Plaintiff worked on an imminent threat for most of the previous night and throughout that day. On May 3, 2021, Plaintiff asked Santana, via text, if she could take three hours of compensatory time (for Saturday) the next morning. Santana replied "yes ma'am".

113.    On May 4, 2021, Santana sent an IM to Plaintiff as soon as Plaintiff turned on her computer, telling Plaintiff to come to Santana's office immediately. When Plaintiff arrived in Santana's office, Santana told Plaintiff she changed her mind about allowing Plaintiff to use compensatory time for Saturday and that Plaintiff needed to take three hours of administrative leave.

1  This is yet another example of how Santana held Bennett to a different standard and did not require

2  Plaintiff's male counterparts (Bennett) to take personal leave time to sleep off his hangover but

3  required Plaintiff to take her personal time, despite being in the office and working over the

4  weekend.

5      114.    On May 11, 2021, Plaintiff had to excuse herself from a supervisor conference due to

6  a physical issue after finding out a former FBI co-worker and friend suddenly passed away. Plaintiff

7  was able to call into the meeting on her bureau-issued cell phone instead of continuing to excuse

8  herself. After the meeting, Plaintiff returned to the SAC's conference room to retrieve the rest of her

9  personal items. As Plaintiff walked past Rouse, he was visibly angry and ripped off his face mask as

10  he yelled at Plaintiff, "where did you go?". Plaintiff explained she was having stomach issues and

11  before Plaintiff could finish, Rouse grunted, rolled his eyes and walked away.

12      115.    On May 23, 2021, Bennett was granted a requested transfer to Squad 10.

13      116.    Although an additional threat measure was added to the LVD CT program, as of the

14  date of this Complaint, Plaintiff is tracking to receive a "gold" rating in FY 2021.

15      117.    As of the date of this Complaint, Bennett remains an FBI Special Agent and EAP

16  Counselor. Upon information and belief, Bennett has kept his incentive award, will be allowed to

17  retire with full benefits and has yet to be held accountable for any of his illegal actions.

18      118.    Upon information and belief, as of the date of this Complaint, the sexual harassment,

19  discrimination, and HWE created by Cucinotta have yet to be investigated by any division in the

20  FBI, OIG, or DOJ's OPR. Upon information and belief, Cucinotta kept his large incentive award and

21  will be allowed to retire with full benefits and without being held accountable for any of his illegal

22  actions.

23      119.    As of the date of this Complaint and upon information and belief, Santana has not

24  been held accountable for her illegal actions of discrimination, HWE, or retaliation.

25      120.    Upon information and belief, Rouse has not been held accountable for his illegal

26  actions of discrimination, HWE, or retaliation against Plaintiff.

27      121.    Upon information and belief, three ASAC's who either previously reported or

28  currently report directly to Rouse have had substantiated cases involving multiple claims of sexual

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

harassment against them. These ASACs include Cucinotta, Hickok, and Johnson—who are all eligible for retirement. However, because of the FBI and EEO process, these claims of sexual harassment were swept under the rug by the FBI and FBI's EM, including EEO and HRD.

122.     On November 5, 2019, a final decision by the Complainant Adjudication Office from the DOJ found a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 29 C.F.R. § 1614.101(b) occurred at the Las Vegas Field Office in Las Vegas, Nevada. An individual was subjected to sexual harassment and retaliated against. Managers, supervisors, and the responsible management official were directed to receive additional EEO training. The affected individual was also denied a grade increase. Rouse was the Special Agent in Charge of the Las Vegas Division at the time of the incident and adjudication.

123.     When a victim of sexual harassment files a Complaint with the FBI's EEO, the EEO automatically refers the Complaint to INSD. When the INSD interviews the victim, the victim is told they are not authorized to discuss the issues in the Complaint with anyone outside of INSD and EAP unless they are given authorization. When the victim requests authorization to discuss the issues in the Complaint with EEO, the INSD will not provide the victim authorization to discuss the matters with EEO. When the victim tries to explain to EEO they are not authorized to discuss the matters in their initial Complaint because the INSD will not authorize them to do so, EEO ensures the victim they are able to discuss the issues with EEO because the investigations run concurrently. The problem arises when the INSD determines the victim discussed the issues in the Complaint with EEO, they are held liable. The process is nothing less than a deterrent for victims to file a Complaint of sexual harassment.

## **CLAIMS FOR RELIEF**

### FIRST CLAIM FOR RELIEF:

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964:

### INTENTIONAL SEX DISCRIMINATION

124.     Plaintiff incorporates by reference the allegations of paragraphs 1-123 above.

125.     The FBI intentionally discriminated against Plaintiff because of her sex, when they failed to investigate her allegations, and allowed FBI EM to continue to sexually harass her without

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1    consequence.

2        126.    The FBI intentionally discriminated against Plaintiff by allowing her harassers and

3    those who contributed to the ongoing hostile work environment to be eligible to retire with full

4    benefits.

5        127.    The FBI's EAP discriminated against Plaintiff by refusing to provide any counseling

6    or help to her which contributed to the hostile work environment she was facing.

7        128.    Additionally, the failure of the FBI LVD EM, HRD, and other FBI executives to

8    address Plaintiff's multiple attempts to report the sexual harassment exacerbated the retaliation by

9    forcing her to work in a hostile environment.

10        129.    Plaintiff suffered adverse actions on the basis of her sex in at least the following

11    ways:

12        a.    Withdrawal of GS15 application

13        b.    Failure to participate in inspections, as career enhancing opportunity, precluding her

14    from advancement opportunities.

15        130.    These acts violated Title VII of the Civil Rights Act of 1964, as amended.

16        131.    Plaintiff has and will continue to suffer compensatory damages and damages for

17    emotional distress, permanent PTSD, and deprivation of her civil rights as a result of the FBI's

18    conduct.

19        132.    The FBI is strictly liable for all sexual discrimination and sexual harassment by the

20    FBI. Supervisors, managers, and co-workers because they were on notice of this harassment and

21    took no action to stop or address it.

22                            SECOND CLAIM FOR RELIEF:

23            <u>RETALIATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964</u>

24        133.    Plaintiff incorporates by reference the allegations of paragraphs 1-132 above.

25        134.    The FBI retaliated against Plaintiff when she filed her initial EEO complaint, and her

26    subsequent complaints. The FBI, through its employees and EM, intentionally interfered with her

27    protected rights under Title VII, while failing to investigate the facts, which were widely observed

28    by others.

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

135.   Plaintiff has and will continue to suffer compensatory and special damages as a result of this illegal retaliation.

THIRD CLAIM FOR RELIEF:

DISPARATE IMPACT IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964

136.   Plaintiff incorporates by reference the allegations of paragraphs 1-135 above.

137.   The FBI has a pattern and practice of failing to investigate sexual harassment claims and failure to provide a hostile free work environment by OIG, EEO, and EAP's failures to investigate the claim, and actively work to dismiss or interfere with victims' rights under Title VII in an active effort to cover up and disguise the seriousness of this issue within the FBI.

138.   These actions violated Title VII of the Civil Rights Act of 1964, as amended, in that they have a disparate impact on women in the FBI, punishing them for bringing forward claims of sexual assault and harassment to cover up the pattern of misconduct among its male agents.

139.   Plaintiff has and will continue to suffer compensatory damages and damages for emotional distress and harm as a result of the FBI's conduct.

**EMOTIONAL AND OTHER HARM**

140.   The conduct described above-caused Plaintiff emotional and other forms of harm proximately caused by the discriminatory and retaliatory conduct of the FBI.

**PRAYER FOR RELIEF**

Plaintiff seeks the following relief:

a.   A Declaratory Judgment stating that the FBI's INSD and OPR, the DOJ OIG and OPR, the FBI's EEO and EAP will all engage in practices that have a positive impact upon women who have been sexually assaulted or harassed within the FBI;

b.   A Declaratory Judgment stating that the FBI has violated Title VII of the Civil Rights Act of 1964 by discriminating against Plaintiff because of her sex, for the creation of substantially HWE, and in retaliation for reporting the sexual harassment incurred by her by FBI ASAC as well as SSA and EAP Counselor;

c.   A Court order directing the DOJ to implement a valid disciplinary process, to institute effective measures to protect female and male FBI personnel from sexual assault and harassment

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

from their co-workers, and to provide effective victim counseling and treatment to female and male personnel who have been subjected to these illegal acts;

      d.     Compensatory damages according to proof;

      e.     Damages for emotional distress, pain, and suffering in the amount to be determined;

      f.     Attorney's fees and costs of this action; and

      g.     Such further relief as the Court may deem proper.

WHEREFORE, Plaintiff demands judgment against Defendant as set forth above.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Karen Veltri hereby demands a trial by jury on all issues so triable by a jury in this action.

DATED this 1st day of July, 2021.

BAILEY❖KENNEDY

By: */s/ Stephanie J. Glantz*
    JOSHUA P. GILMORE
    STEPHANIE J. GLANTZ

AND

DAVID SHAFFER LAW, PLLC
DAVID J. SHAFFER
KELLEY BROOKS SIMONEAUX

*Attorneys for Plaintiff*
KAREN VELTRI

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820